IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Julius Rouse**, | ) | Civil Action No. 2:12-1052-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **International Paper Company**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 42 U.S.C. § 1981. Plaintiff, an African-American, alleges that the Defendant discriminated against him on the basis of his race and unlawfully retaliated against him in violation of the cited statutes.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 8, 2013. After receiving an extension of time to file a response, Plaintiff filed a memorandum in opposition to the Defendant's motion on April 15, 2013, following which the Defendant filed a reply memorandum on April 25, 2013. The Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



1

## **Background and Evidence**[2]

The Defendant is a producer of paper, packaging and forest products located in Georgetown, South Carolina. Plaintiff began working for the Defendant in 1994 as an hourly laborer. Over the course of his career with the Defendant, Plaintiff worked in several different areas, eventually rising to the position of a Service Operator II (SOII).[3] The area manager of the power plant and Plaintiff's second line supervisor during the relevant period was Hendley Williams, also an African-American. Williams Deposition, pp. 29-30.

Williams testified that between 2003 and 2004 Plaintiff performed his job satisfactorily. Williams Deposition, p. 27. However, in January 2009, Plaintiff was issued a written warning and demoted to an SOII[4] after being cited for failure to follow standard operating and safety procedures, which had allowed a chemical to be unloaded without proper verification. Plaintiff's Deposition, Exhibit 15. At his deposition, Plaintiff did not contest that the January 2009 event for which he was cited occurred. Plaintiff's Deposition, pp. 88-90. Plaintiff also did not grieve this disciplinary action. Plaintiff's Deposition, p. 95.

The following month, Plaintiff received a three day suspension and was required to submit an acceptable corrective plan to his manager after he was cited for failing to properly check

---

[2]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]There are three levels of Service Operators in the Defendant's power plant. An SOIII is an entry level position whose responsibilities include maintaining the equipment on the bottom three floors of the power plant. An SOII is the next level of Service Operator, and is responsible for maintaining the equipment from the fourth floor to the top floor of the power plant. An SOI is the highest level of Service Operator, and is responsible for the DI plant, the well water inlet, and the turbines. Williams Deposition, pp. 24-26, 30-32, 41).

[4]At the time, Plaintiff was training to be an SOI. Plaintiff's Deposition, pp. 91-92.

2



and clean liquor inlet nozzles. Plaintiff's Deposition, Exhibit 17. See also, Plaintiff's Deposition, pp. 100, 104-105. Plaintiff testified that he needed a refresher course on how to do this procedure, apparently because he had been out of work for a long period of time around 2007 due to a worker's compensation claim. Plaintiff's Deposition, pp. 48-49, 106. Plaintiff also conceded that he should have told management to send somebody else to do this job, but did not do so. Plaintiff's Deposition, pp. 106-107. Plaintiff further conceded that there was no one else that should have been disciplined as a result of this event, and that he did not file a grievance with respect to this disciplinary action. Plaintiff's Deposition, pp. 111-112.

In October 2009 Plaintiff was counseled for poor job performance after improperly opening a water discharge valve. Plaintiff's Deposition, Exhibit. 18. Plaintiff acknowledged at his deposition that he had incorrectly warmed up the feed water pump on that date, although when asked if he disputed anything in the memorandum documenting this incident (Exhibit 18 to Plaintiff's Deposition), Plaintiff testified that he did not remember the incident. Plaintiff's Deposition, pp. 112-113.

In December 2009 Plaintiff received a writeup for failing to perform a proper basic care inspection. Plaintiff's Deposition, Exhibit 19. Plaintiff testified that he did not recall whether he was disciplined as a result of this incident, and that he did not file a grievance because the "union never stood by [him]". Plaintiff's Deposition, pp. 115-116.

In January 2010, Plaintiff was cited for closing down the wrong boiler precipitator as part of a planned outage taking down the boiler for maintenance. Plaintiff's Deposition, Exhibit 20. Plaintiff testified that he shut down the boiler he was told to shut down, and that if the wrong boiler was shut down, he should not have been blamed. Plaintiff's Deposition, pp. 126, 128. In any event,



during the January 2010 event, the boiler "tripped", causing a fire to escape from various ports in the boiler. Plaintiff's Deposition, Exhibits 20, 23. The Defendant has a substance abuse policy that requires an employee to take and pass a drug test when an on the job incident occurs which results in damage to property or exposure or potential exposure of individuals to a hazardous or toxic substance resulting in one or more specified events. Defendant's Exhibit E, [Document No. IP000081]. Because of the damage from this incident, Plaintiff was administered a drug test, which was positive for marijuana. Plaintiff's Deposition, Exhibit 21; see also Plaintiff's Deposition, p. 137, Williams Deposition, pp. 44-45. Following this positive drug test, Plaintiff was immediately sent home. Williams Deposition, pp. 45-46.

On February 11, 2010, Plaintiff was issued a letter, signed by Alan Mynatt (the Power Business Unit Manager), notifying Plaintiff that due to his positive drug test and his history of poor performance over the preceding year, he was being terminated. Plaintiff's Deposition, Exhibit 23. Williams testified that the decision to terminate Plaintiff's employment was the result of a process that involved a recommendation from him, but also included the union, human resources, and the mill manager (Jeannine Siembida). Williams Deposition, p. 49. Siembida is white. Plaintiff's Exhibit 21. Following discussions with the Union, Plaintiff was offered an opportunity to return to work for the Defendant as a laborer, but the Defendant never received any response from the Plaintiff to this offer. Plaintiff's Deposition, Exhibit 25; see also Plaintiff's Deposition, pp. 170, 172.

Following his termination, Plaintiff filed an administrative charge of discrimination, asserting race discrimination and retaliation, and in which he stated that white employees who had tested positive were allowed to retest, that he had been reprimanded and suspended without pay for incidents for which white co-workers were not disciplined, and that when he complained to Williams



about his mistreatment he received "no relief or . . . justice". <u>Plaintiff's Exhibit 17</u>.  After receiving a Right to Sue letter (see attachment to Complaint), Plaintiff filed this action in United States District Court alleging that he had been treated disparately and terminated based on his race in violation of Title VII and § 1981 (First Cause of Action), and that he was subjected to adverse employment actions and terminated for complaining about discriminatory conduct in violation of Title VII and § 1981 (Second Cause of Action).

### Discussion

The Defendant has moved for summary judgment on both causes of action in the Complaint.  Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).  Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

### I.

### (Disparate Treatment Claim)

In his First Cause of Action, Plaintiff asserts a disparate treatment race discrimination



claim in violation of Title VII and § 1981,[5] based on his assertion that he was subjected to race

discrimination when he was disciplined and ultimately terminated by the Defendant.[6]  Plaintiff's

claim requires proof of intentional discrimination, either by direct evidence or by the structured

procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7]  Plaintiff concedes

in his brief that he does not have any direct evidence of race discrimination,[8] and the Defendant

argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue

of fact as to whether any of its employment decisions occurred because of Plaintiff's race under the

---

[5]To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [his] race . . . and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).

[6]Plaintiff also argues in his brief that he did not receive training that he should have. However, that assertion was not part of his administrative charge of discrimination.  Rather, Plaintiff only complained about allegedly disparate discipline, including his termination.  See Plaintiff's Exhibits 2 and 17.  Therefore, any claims relating lack of training, to the extent they are asserted in this action, are not properly before this court for consideration.  Chacko v. Patuxent Inst., 429 F.3d 505, 511 (4th Cir. 2005)[Claims not raised in timely administrative charge are barred].

[7]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute.  See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

[8]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996);  Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

6



McDonnell Douglas proof scheme to survive summary judgment.[9]  The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas.  First, Plaintiff must establish a prima facie case of discrimination.  If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against him.  Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions.  Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the  Defendant were really based on Plaintiff's race.  McDonnell Douglas Corp., 411 U.S. at  802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also

---

[9]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hashem-Younes v. Danou Enters, Inc., 311 Fed.Appx. 777, 779 (6th Cir. 2009)[Affirming district court's application of McDonnell Douglas/Burdine framework where the Plaintiff failed to raise a mixed-motive claim in her complaint or in her response to the Defendant's motion for summary judgment motion, and the record was "utterly silent as to mixed motives"]; Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

  In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119, 1125 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class (African-American), and that he was subjected to an adverse employment action when he was terminated. However, the Defendant argues that the evidence does not show that Plaintiff was satisfactorily performing his job, or that he was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Plaintiff argues that the evidence shows he *was* satisfactorily performing his job because he "had no problems from February 2009 until December 2009", and Williams testified that he was a good employee. Plaintiff additionally argues that there is evidence showing that similarly situated employees were treated more favorably than he was, giving rise to an inference of unlawful discrimination. Each of these issues is discussed below.

  First, with respect to his job performance, the evidence previously discussed herein, supra, documents five separate disciplinary actions and/or citations issued against the Plaintiff from January 2009 through January 2010. See Plaintiff's Deposition, Exhibits 15, 17, 18, 19 and 20.



Plaintiff has not disputed the occurrence of any of these job events, even admitting that one incident could have resulted in a "catastrophic event." See Plaintiff's Deposition, pp. 88-90. Further, the record shows that following the last of these five incidents, in January 2010, Plaintiff was administered a drug test, which he failed. Plaintiff's Deposition, Exhibit 21; see also Plaintiff's Deposition, p. 137, Williams Deposition, pp. 44-45. It is not disputed that the Defendant has a substance abuse policy for employees, which is also adopted in the Collective Bargaining Agreement (Plaintiff was a unionized employee), which includes a prohibition on illegal drug use (including marijuana), and which provides for disciplinary action up to and including discharge from employment. See Defendant's Exhibit E. Plaintiff admits that he knew about the Defendant's substance abuse policy. See Defendant's Exhibit 5; see also Plaintiff's Deposition, pp. 24-25.

Again, as noted, Plaintiff does not dispute *any* of this evidence. Rather, in arguing that he was adequately performing his job, he states that he had no disciplinary problems from February 2009 until December 2009, a calculation which does not dispute the job actions discussed hereinabove, and which also obviously does not include the additional documented employment action of October 2009. See Plaintiff's Deposition, Exhibit 18. This is not evidence of good job performance. Plaintiff also argues that Williams had testified that he was a good employee. However, that testimony referenced Plaintiff's job performance in 2003 and 2004, and has nothing to do with the time period relevant to Plaintiff's claims. See Williams Deposition, p. 27. Therefore, Plaintiff's arguments do not create a genuine issue of fact as to whether he was satisfactorily performing his job over the course of 2009 leading up to his dismissal in February 2010. Cf. Beall v. Abbott Labs, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self



assessment of the claimant]; <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997)[inquiry centers upon the employer's beliefs, and not the employee's own perception of [her] performance]; <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003)[On a motion for summary judgment, a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations."].  Hence, Plaintiff has failed to meet this prong of his prima facie case.

Further, even assuming that the evidence was sufficient to show satisfactory job performance, Plaintiff has presented no evidence whatsoever to show that the disciplinary actions taken against him, or his termination, were the result of racial discrimination.  <u>See</u> <u>Sullivan v. River Valley School District</u>, 197 F.3d 804, 815 (6th Cir. 1999), <u>cert.</u> <u>denied</u>, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].  First, the main individual with the Defendant about whom Plaintiff complains, and who Plaintiff contends treated him disparately, Hendley Williams, is himself an African-American.  Plaintiff has offered no cogent argument for why Williams, a fellow African-American, would have discriminated against him because he is black.  <u>Cf.</u> <u>Dungee v. Northeast Foods, Inc.</u>, 940 F.Supp. 682, 688 n. 3 (D.N.J. 1996) [that decisionmaker is member of plaintiff's own protected class "weakens any possible inference of discrimination"]; <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) ["[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."]; <u>United States v. Crosby</u>, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) ["While we acknowledge that a...violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim....we note that the district court found that there was no evidence that [the decision-maker] held members of his own race to a higher standard of conduct than members of

10



another race."].

Plaintiff also complains about five other African-American employees who, he asserts, were treated poorly, or in some cases more favorably, by Williams: Perry Davis, Darrell Gardner, Walter Rouse, Lloyd [first name not provided] and Jonathan Wigfall. <u>Plaintiff's Deposition</u>, pp. 82, 167, 169, 170, 175-176, 186-187. Again, however, it is unclear how Williams' treatment of these other African-Americans, even assuming these other employees were in fact treated unfairly, or conversely, more favorbly by Williams, is evidence of race discrimination, given the fact that they are all African-Americans and Williams is also an African-American. <u>Cf</u>. <u>Nichols v. Caroline County Bd. of Educ.</u>, 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings]. In any event, none of these individuals are outside of Plaintiff's protected class.

Plaintiff also testified in his deposition that he had witnessed other employees (presumably white employees, although that is not clear) shutting down the wrong boiler, an event for which he was disciplined, but that the Defendant did not discipline these other employees and "swept it under the rug and every thing went hunky-doory". <u>Plaintiff's Deposition</u>, pp. 126. However, Plaintiff has failed to identify any of these other employees, state who they are or what exactly happened, or present any evidence for when these other events allegedly occurred. <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; <u>Cook v. CSK Transp. Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]; <u>see also</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) [there must



be evidence on which a jury could reasonably find for the Plaintiff].

Hence, even if the evidence showed that the disciplinary actions taken against the Plaintiff were unwarranted (a finding which the undersigned does not make), there is nothing in the evidence to show that his race played any role in these disciplinary decisions, or in his discharge, other than Plaintiff's own unsubstantiated assumption that this was the case.  Cf. Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were [racial] in nature"]; see also Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus when an employee is discharged because of  an employer's honest mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."].

Therefore, as Plaintiff has failed to establish the necessary elements of his disparate treatment prima facie case, this claim should be dismissed.  Gairola v. Virginia Dep't of General



12

Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only

evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable

treatment was the result of discrimination...."].

## II.

### (Retaliation Claim)

Plaintiff asserts in his Second Cause of Action that he was disciplined and terminated

in retaliation for making complaints about unlawful discrimination.  Section 704(a) of Title VII, 42

U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII[10] are subject to the same requirements of proof as are

applicable to disparate treatment claims.  Ross v. Communications Satellite Corp., 759 F.2d 355, 365

(4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see

also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).  The employee is initially

required to establish a prima facie case of retaliation by a preponderance of the evidence.  Such a

prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the

employer took adverse action against the employee; and (3) a causal connection existed between the

---

[10]See also, n. 7, supra.



protected activity and the adverse action. <u>Id.</u>; <u>Munday v. Waste Management of North America, Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. <u>Id</u>

Again, it is not disputed that the Defendant subjected Plaintiff to an adverse employment action. However, the Defendant argues that there is no evidence that Plaintiff ever engaged in any protected activity as defined by statute, nor is there any evidence of a causal connection between any protected activity and Plaintiff's discipline and/or termination. Plaintiff argues in his brief that white employees who had positive drug tests were allowed to retest, while he was not, and that he was reprimanded and suspended without pay for incidents in which his white coworkers were involved and should have been disciplined, but were not;[11] and that when he complained to Williams about his mistreatment, he received no relief, and that his subsequent disciplinary actions and termination were a result of his having complained to Williams. <u>Plaintiff's Brief</u>, p. 8; <u>see</u> <u>also</u> <u>Complaint</u>, ¶ 76.

However, Plaintiff has provided no evidence to show that he ever complained to Williams about racial discrimination or otherwise engaged in any protected activity for purposes of a retaliation claim. <u>Rodas v. Town of Farmington</u>, 918 F.Supp.2d 183, 188 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge

---

[11]As previously discussed in Section 1 of this opinion, <u>supra</u>, Plaintiff has offered no evidence to support these general and conclusory statements. <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].



of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]; Sung Kun Kim v. Panetta, No. 11-1370, 2012 WL 3600288 at * 17 (E.D.Va. Aug. 21, 2012) ["Protected activity does not include generalized employment-related complaints unrelated to Title VII prohibited discrimination"]; Sara Kaye Ruffner v. MD OMG EMP LLC, No. 11-1880, 2012 WL 3542019 at * 3 (M.D. Aug. 13, 2012)["Protected activity does not include opposition to all 'unlawful practices' or 'practices the employee simply thinks are somehow unfair'; the employee must have 'actually opposed employment practices made unlawful by the [anti-discrimination statute"]; Bowman v. Holopack Intern. Corp., No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19, 2007)["[T]he opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures."].  The Defendant points out that Plaintiff did not himself testify at his deposition that he had complained to Williams, Mill Manager Debbie Fleck, or to anyone else with the Defendant about race discrimination or that he believed he was being subjected to race discrimination.  See Plaintiff's Deposition, pp. 145, 224.  Further, in the section of his brief addressing the issue of whether the record contains evidence that Plaintiff engaged in protected activity, Plaintiff fails to cite to any place in the record to support his claim that he engaged in protected activity.  See Plaintiff's Brief, pp. 20-21.

Without any evidence showing that he engaged in protected activity, Plaintiff is unable to establish a causal connection between his disciplinary actions and/or termination and his having engaged in protected activity, a requirement for the establishment of his prima facie case.  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; Sullivan, 197 F.3d at 815 ["Without a



15

showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].   Therefore, Plaintiff's retaliation claim is without merit and should be dismissed. Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; see also EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991)[Plaintiff must show that "but for" the defendant's intent to retaliate against him because of his having engaged in protected activity, he would not have been subjected to the employment actions at issue].

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 18, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

17
